### LUIS HERNANDEZ v. THE STATE.

No. 784.    Decided November 9, 1910.

Rehearing Denied November 30, 1910.

**1.—Assault to Rob—Judgment—Reforming same—Practice on Appeal.**

Where the indictment contained two counts, only one of which was sub- mitted, and the verdict was general and the judgment based on the count dis- missed, the appellate court will so reform the judgment as to comply with verdict.

**2.—Same—Sufficiency of the Evidence.**

Upon trial of assault to commit robbery, where there was no positive testi- mony that the defendant got the property which the assaulted party missed immediately after the robbery and which he had at the time the assault was made, the conviction was sustained although it was not positively shown that the defendant took the property.

Appeal from the District Court of El Paso. Tried below before the Hon. James R. Harper.

Appeal from a conviction of assault with intent to commit rob- bery; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Murphy & Bryan,* for appellant.—On question of the insufficiency of the evidence: Sanders v. State, 53 Texas Crim. Rep., 613, 111 S. W. Rep., 157; Campbell v. State, 61 Am. Dec., 49; Walton v. State, 29 Texas Crim. App., 163, 15 S. W. Rep., 646; Mullins v. State, 37 Texas, 337.

On the question that the defendant was not present participating in the assault: Gallaher v. State, 28 Texas Crim. App., 247, 28 S. W. Rep., 1087; Gillian v. State, 3 Texas Crim. App., 132; Hampton v. State, 1 Texas Crim. App., 652.

*John A. Mobley,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—The indictment contains two counts, the first charging assault with intent to murder Estevan Griego, and the second charging an assault with intent to commit robbery from said Estevan Griego. The court submitted the second count only to the jury, and their verdict was for two years confinement in the penitentiary.

The verdict did not specify of what offense they convicted. It was a general verdict. The judgment based upon the verdict was for an assault with intent to murder. This was wrong. The court had no authority to enter a verdict of assault with intent to murder upon a conviction for assault with intent to commit robbery. But under the power vested in this court, in regard to such matters, the judgment will be reformed so as to comply with the verdict of the jury which, viewed in the light of the charge, was for assault with intent to commit robbery. The judgment will, therefore, be reformed and corrected and entered upon the minutes of this court, as it should have been done in the court below, that appellant is guilty of an assault with intent to commit robbery as was determined by the jury in their verdict.

The only question presented for revision is the sufficiency of the evidence to support the finding of the jury. Dr. Butler testified that he attended the assaulted party, and found wounds upon his body inflicted by some sharp instrument. One wound was about eight inches in length, starting at the right of the spinal column, just below the base of the neck, and extending out near a point on the shoulder. Another wound penetrated the plueral cavity, and there was a small wound on the wrist. He further states there were three wounds on the back, the most serious being the one penetrating the plueral cavity. This wound he said could have produced death. So much for that phase of the case. Estevan Griego testified he knew appellant by sight; that on the night of January 8, about one o'clock in the morning, he saw appellant and Jose Ronquillo. That he, witness, had taken about four or five drinks of beer in an hour

and to that extent was drinking; that Ronquillo and appellant made an attack on him under the following circumstances: That he was en route home about the hour of the night indicated, and when he arrived near two posts appellant struck him on the head with his hand, and Jose Ronquillo cut him. This was on South El Paso Street, near Eighth Street. As he approached the posts where appellant and Jose were, appellant hit him with his hand, and the other man jumped on him and cut him in the back first; that he got the top cut first, then the lower one, and the last one while he was on the ground, and received a cut on the wrist when he got up. While Jose was cutting the witness defendant went away up along the side of the railroad track, which he says was seven steps away; that appellant's departure occurred when Jose cut him the first time. He says that he is certain appellant was one of the two men that attacked him; that he had known him two or three years by sight only, and on the night of the trouble had seen him at the Popular saloon in company with Jose Ronquillo, which was about two or three hours previous to the difficulty, and that he had done nothing to these men to injure their feelings in any way. On cross-examination he stated that he had seen appellant about two or three hours before he was cut at the Popular saloon, and did not see him any more until the cutting occurred. The night was rather dark, while the moon was shining slightly; it was just above the horizon of the east and shed very little light, and practically all the light was from an electric light, which was about two blocks away. He said, "I recognized defendant when he got up on the railroad track; that is the first time I recognized him. The other man had me down and I turned my face and saw him, and not until then had I recognized him, because the other man would not give me a chance to see." Gonzales testified that it was about two o'clock in the morning Estevan left the billiard hall and went down El Paso Street. That he knew Jose Ronquillo and appellant by sight; that they left the Popular saloon when it closed, and went down to where these two posts were; that the two parties went down and stopped at these two posts. His testimony is to the effect that no others went up and down the street except appellant, Jose Ronquillo and the assaulted party. During the cross-examination he stated that he had not mentioned these matters for two weeks after the occurrences, although he was at the house of Estevan Griego when the officers came there just after the cutting. Appellant took the stand in his own behalf, and testified positively that he did not know Jose Ronquillo; that he was not with him on the night of the difficulty, but was at home, and had not been away from home at night for quite a number of nights both before and after the difficulty. The testimony showing the intent to commit robbery is found in the statement of the assaulted party as follows: "I only lost my hat

there that night. I also had some letters in my inside coat pocket, and they were gone, too. I had them just before I met these men."

There is no positive testimony that appellant got the hat or the letters. It is inferable, however, we think, from the fact that Griego had his hat just before meeting the men and also the letters, which were on the inside of his coat pocket. If he knew that either one or both of the parties took his hat and letters he does not positively state so. In fact, the above quoted excerpt from the statement of facts is all that he testifies in regard to that matter. There were no ill-feelings between the parties prior to this time, and there is no reason assigned for this attack from that standpoint. The fact that the parties went down the street and hid behind the posts and made the attack upon the assaulted party, in connection with the other facts stated, is also an indication that the purpose was to rob. This is strengthened by the fact, as before stated, that there had been no ill-feeling between the parties, and no occasion for ill-feeling as far as this record goes. They were practically strangers to each other, at least knew each other only by sight. While the evidence is not as satisfactory as it ought to be, yet with these facts in the record we are not prepared to say that the jury were unauthorized to reach the conclusion they did reach, and, therefore, we do not feel justified in reversing the judgment for want of sufficient testimony to sustain the conviction.

The judgment is therefore affirmed.

*Affirmed.*

[Rehearing denied November 30, 1910.—Reporter.]